526 A.2d 971

In re DARNELL F.

No. 1478, Sept. Term, 1986.

Court of Special Appeals of Maryland.

June 11, 1987.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore

City and Jill Myers, Asst. State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before WEANT, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Following an adjudicatory and a disposition hearing, *see* Maryland Cts. and Jud.Proc.Code Ann. § 3–801(b) and § 3–801(n), Darnell F., appellant, was determined by the Circuit Court for Baltimore City, to be a delinquent child. *See* Maryland Cts. and Jud.Proc.Code Ann. § 3–801(*l*). The delinquent act with which he was charged and as to which facts were found to have been sustained at the adjudicatory hearing was unauthorized use of an automobile.[1] Because the car which appellant used without authorization was, while in appellant's possession, totally destroyed, its owner filed a claim for restitution pursuant to Maryland Cts. and Jud.Proc.Code Ann. § 3–829(a)[2] and, pursuant to § 3–829(d) and (e),[3] the court scheduled a restitution hearing. On the

---

1. A delinquent act is "an act which would be a crime if committed by an adult." Maryland Cts. and Jud.Proc.Code Ann. § 3–801(k). In this case, Maryland Code Ann. Art. 27 § 349 proscribes the unauthorized use of an automobile by an adult and fixes a penalty for the violation.

2. Section 3–829(a) provides:
    (a) The court may enter a judgment of restitution against the parent of a child, or the child in any case in which the court finds the child has committed a delinquent act and during the commission of that delinquent act has:
       (1) Stolen, damaged, or destroyed the property of another;
       (2) Inflicted personal injury on another, requiring the injured person to incur medical, dental, hospital, or funeral expenses.

3. Subsections (d) and (e) provide:
    (d) A restitution hearing to determine the liability of a parent or child, or both, shall be held not later than 30 days after the disposition hearing and may be extended by the court for good cause.
    (e) A judgment of restitution against a parent may not be entered unless the parent has been afforded a reasonable opportunity to be heard and to present appropriate evidence on his behalf. A hearing

date set, the assistant State's Attorney was not in the courtroom when the court was prepared to hold the hearing, whereupon the juvenile judge[4] dismissed the restitution claim. Upon the State's motion for reconsideration, and after a hearing at which the assistant State's Attorney explained her absence and argument was presented by appellant's counsel, the claim was reinstated. The court ruled that it had discretionary authority to reinstate the case and that it was in the best interest "of the child, society, and the elusive entity called justice" to do so. After a hearing, the court ordered restitution in the amount of $5,000.00.

Appellant's appeal from the judgment thus entered questions the juvenile judge's authority to have reconsidered and reinstated the restitution claim. His attack is two-pronged: (1) since juvenile court is a court of special jurisdiction and there is no statutory authority giving it revisory power over restitution orders, the juvenile judge had no legal authority to reinstate a restitution claim and (2) even if the juvenile judge has revisory power over restitution orders, reinstating the restitution claim in this case violated appellant's Fifth Amendment guarantee against double jeopardy.

Maryland Rule 916a. provides:

a. *Revisory Power.* An order of the court may be modified or vacated if the court finds that action to be in the best interest of the child or the public, except in cases involving commitment of a child to the Department of Health and Mental Hygiene for placement in a State mental hospital. In cases involving such commitment, the court shall proceed as provided in Rule 915.

---

under this section may be held as part of an adjudicatory or disposition hearing for the child.

**4.** The judge who dismissed the restitution claim, having retired in the meantime, was not the same judge who heard the motion for reconsideration.

The rule expressly authorizes the juvenile court to modify or vacate an order of the court, provided it is in the best interest of the child to do so. The issue then is whether this rule is sufficiently broad to encompass an order of the juvenile court dismissing a restitution claim. *In Re: Leslie M.*, 305 Md. 477, 505 A.2d 504 (1986) is instructive on this point.

There, the issue was whether the juvenile judge "has the authority to vacate a prior order adjudicating a child to be delinquent after the successful completion of a period of probation." 305 Md. at 478, 505 A.2d 504. The Court rejected the trial judge's ruling that a finding of delinquency made at an adjudicatory hearing was not an order of the court within the meaning of Maryland Rule 916 a. It held that "an adjudication of delinquency is an 'order' within the purview of Rule 916(a)." 305 Md. at 482, 505 A.2d 504. The Court reasoned:

> We are persuaded that given the stated focus of Courts and Judicial Proceedings Article, Title 3, Subtitle 8, Juvenile Causes, set out in § 3–802(a)(2) and 3–802(b), our interpretation more faithfully adheres to the legislatively spelled out purposes of that Subtitle. Section 3–802(a)(2) provides as one of the purposes, "To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior." Subsection (b) provides that "[T]his subtitle shall be liberally construed to effectuate these purposes." To view Rule 916(a) in as restrictive a fashion as did the trial judge does not comport with a liberal statutory construction; rather, it runs counter to the express language of the statute. Whenever possible, a rule should be construed in accordance with statutorily expressed legislative policy.

*Id.*, 305 Md. at 481–82, 505 A.2d 504.

In addition to its emphasis on the legislative intent of the Juvenile Causes Act, the Court's holding implicitly recognized well-settled principles of statutory interpretation, which are equally applicable to the interpretation of Rules

of Procedure, 305 Md. at 481, 505 A.2d 504, specifically, that:

> ... where unambiguous statutory language expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of the words used with a view towards making the statute express an intent which is different from its plain meaning.... Manifestly, therefore, a statute must be construed without resorting to subtle or forced interpretation for the purpose of extending or limiting its operation ... (citations omitted)

*In Re: Arnold M.,* 298 Md. 515, 521, 471 A.2d 313 (1984).

▇▇▇▇ The required restitution hearing has a function and purpose distinct from that of either an adjudicatory or a disposition hearing. *In Re: Herbert B.,* 303 Md. 419, 425, 494 A.2d 680 (1985). Thus, while the hearing may be held "as part of" or "contemporaneously with" either, § 3-829(e), the adjudication of a child as a delinquent child is not a prerequisite to the passage of an order of restitution. *In Re: Herbert B.,* 303 Md. at 427, 494 A.2d 680. It is necessary, however, for the passage of such an order that the court find both that the child had committed the delinquent act alleged in the petition and that during its commission, the child had stolen, damaged or destroyed the victim's property. 303 Md. at 426-27, 494 A.2d 680. On the other hand, restitution proceedings, consistent with the purposes of the Juvenile Causes Act, *see* § 3-802(a),[5] are as rehabili-

---

5. Section 3-802 provides:
   (a) The purposes of this subtitle are:
   (1) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interest and the protection of the public interest;
   (2) To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior;
   (3) To conserve and strengthen the child's family ties and to separate a child from his parents only when necessary for his welfare or in the interest of public safety;

tative, and for the same or similar reasons, as are its adjudicative procedures. So viewed, it is patent that a reading of Maryland Rule 916a. to exclude from its coverage orders relating to restitution, particularly those having the effect of foreclosing its award, is no more warranted than was the restrictive interpretation given that rule by the trial judge in *In Re: Leslie M.*

Moreover, there is another reason to uphold the trial judge's ruling.

■ The restitution hearing was scheduled to begin at 1:00 p.m. At that time, however, the judge was hearing a post conviction matter. Therefore, although the assistant State's Attorney, the assistant Public Defender, the parties, and the witnesses were present, the restitution hearing did not proceed. The assistant State's Attorney stated at the hearing on the motion for reconsideration that, rather than wait for the court to finish the hearing in progress, she proceeded to other juvenile courts, in which matters for which she was responsible were pending, and handled those matters. She also stated that she informed court personnel and appellant's counsel before leaving and that she returned to the courtroom periodically during the afternoon to check its availability. When the judge was ready to begin the restitution hearing, at approximately 3:25 p.m., the assistant State's Attorney was not present. According to appellant's counsel, she and the victim searched for the assistant State's Attorney without success. At 4:10 p.m., the trial judge instructed appellant's counsel to call the case. After calling the case, defense counsel moved for dismissal, citing the assistant State's Attorney's absence, on the ground of lack of prosecution. The motion was grant-

---

(4) If necessary to remove a child from his home to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents;
(5) To provide judicial procedures for carrying out the provisions of this subtitle.
(b) This subtitle shall be liberally construed to effectuate these purposes.

ed. The assistant State's Attorney learned that the case had been dismissed when she returned to the courtroom several minutes later.

In *In Re: Darryl D.*, 308 Md. 475, 520 A.2d 712 (1987), *aff'g* 66 Md.App. 434, 504 A.2d 676 (1986), relying upon cases holding that dismissal was an improper sanction for violation of a time provision contained in the rules, *see e.g., In Re: Dewayne H.*, 290 Md. 401, 430 A.2d 76 (1981); *In Re: Trevor A.*, 55 Md.App. 491, 462 A.2d 1245 (1983), *cert. dismissed as improvidentially granted*, 299 Md. 428, 474 A.2d 207 (1984); *In Re: Howard L.*, 50 Md.App. 498, 438 A.2d 939 (1982), the Court held that it was an abuse of discretion for the trial judge to dismiss a delinquency petition for lack of prosecution because the prosecutor was tardy. The Court reasoned:

> If, in light of the special objectives of juvenile proceedings, it is error to dismiss for violation of a time provision *mandated* by the rules, it would seem axiomatic, absent exceptional circumstances, that it is an abuse of discretion to order dismissal as a means of reprimanding a tardy prosecutor. This is particularly so where there is scant, if any evidence of wilfulness and where the State was ready to call the case within fifteen minutes of the master's deadline. Moreover, an attorney's failure to appear is punishable under proper circumstances as a contempt. (emphasis in the original)

*In Re: Darryl D.*, 308 Md. at 482, 520 A.2d 712. We are unable to discern any significant difference between the facts *sub judice* and those in *In Re: Darrell D.* Accordingly, we hold that the court's dismissal of the restitution claim was an abuse of discretion.

We are aware that appellant has not addressed the propriety of the dismissal of the restitution claim, preferring to focus entirely upon the authority of the trial judge to reconsider and reinstate it. Nevertheless, we perceive the issue to be significant; an action which is the product of an improper exercise of discretion may be corrected by the court upon a motion for reconsideration. Certainly that is

consistent with a trial court's granting of a motion for new trial upon motion of a party bringing to its attention errors made during the trial. Thus, it is not solely the province of the appellate courts to review, identify and correct abuses of discretion.

Alternatively, appellant argues that permitting modification or vacation of the order dismissing the restitution claim is barred by principles of double jeopardy. Asserting that there is a punitive aspect to a juvenile court's order of restitution and that restitution constitutes punishment for purposes of the prohibition against multiple punishment for a single offense, he contends that, when the Public Defender called the case, at the court's request, jeopardy attached. Thus, he continues, the judge's grant of his motion to dismiss, in effect, declared that no punishment should be imposed. The subsequent order of restitution, he concludes therefore, constituted an increase in sentence, violative of the double jeopardy clause.

■■■ Although the double jeopardy clause applies to juvenile offenders, *In Re: Mark R.*, 294 Md. 244, 261, 449 A.2d 393 (1982); *Parojinog v. State*, 282 Md. 256, 260, 384 A.2d 86 (1978), and this issue raises several interesting questions, we do not reach them for two reasons: first, the issue of double jeopardy was not raised below and is consequently not before us, *Howell v. State*, 56 Md.App. 675, 676, 468 A.2d 688 (1983), *cert. denied*, 479 U.S. 1039, 106 S.Ct. 412, 88 L.Ed.2d 362 (1985); Maryland Rule 1085, and secondly, jeopardy does not attach merely because a case is called. In a case tried without a jury, the " 'normal rule' is that jeopardy fastens when the trial commences, *i.e.*, when the judge begins either to hear testimony or to receive evidence." [6] *State v. Rhodes*, 36 Md.App. 214, 215, 373 A.2d 636 *cert. denied*, 281 Md. 742 (1977), citing *Blondes v. State*, 273 Md. 435, 444, 330 A.2d 169 (1975).

---

**6.** The State, forcefully and, we might add, persuasively, argues that double jeopardy is not implicated because appellant sought the termination of the proceedings.

JUDGMENT AFFIRMED.
COSTS TO BE PAID BY APPELLANT.