THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES BUONAVOLANTO, Defendant-Appellant.

First District (6th Division)   Nos. 1—91—1023, 1—91—1043 cons.

Opinion filed November 20, 1992.

Onesto, Giglio, Meltreger & Associates, of Chicago (Peter A. Regulski, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Defendant-appellant James Buonavolanto, after prevailing in a civil forfeiture action pursuant to section 505 of the Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1505), was found guilty of delivery of a controlled substance and sentenced to a term of nine years' imprisonment. Defendant appeals both the criminal conviction and the denial of his motion to preclude the State from proceeding against him criminally due to the effect of the prior action. Because of our disposition of the collateral estoppel issue, we need not address defendant's other grounds for appealing the criminal conviction.

The pertinent facts are as follows. In 1989, the State filed a civil forfeiture suit against defendant's ownership interest in a 1987 Ford Taurus automobile pursuant to the Illinois Controlled Substances Act. The trial judge, Judge Bolan, ruled that the State had failed to establish that the vehicle was used to facilitate a crime. The State then pursued criminal proceedings against defendant, charging defendant with delivery of a controlled substance in violation of section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)).

Defendant filed a motion to dismiss on the ground that the State was collaterally estopped from bringing the criminal action against defendant due to the State's failure to prevail in the prior civil forfeiture proceeding. The trial judge in the criminal proceeding ruled that because there was an identity of neither issues nor parties in the two proceedings, collateral estoppel did not apply. Following a bench trial, defendant was found guilty as charged.

In most respects, the testimony at the two trials was the same. Agent John Majchur of the Northeastern Metropolitan Enforcement Group (NEMEG) testified that from January through September 1988 he participated in an investigation regarding the purchase of narcotics from codefendant Giovanni Dominguez. On September 20, 1988, he and other agents of NEMEG formulated plans to purchase narcotics from Dominguez. At about 6 p.m., he established surveillance at the residence of Dominguez's mother at 1533 Lombard in Cicero, Illinois. He observed Agent Guerra arrive in front of the residence and speak with Dominguez. The two men entered Agent Guerra's car and proceeded to Harvey Street.

Next, according to Majchur, he saw Dominguez enter a black Ford Taurus with the license plate "Buona 1," driven by defendant. The vehicle proceeded southbound from 15th Street and turned into an alley. From a point perpendicular to the alley, Agent Majchur observed defendant exit the vehicle, which had stopped, walk to a garbage can and retrieve a blue and white bag. Defendant then reentered the vehicle and drove away. Agent Majchur, after alerting other agents, then observed Dominguez exit the Ford Taurus carrying a bag. Dominguez was subsequently apprehended by other agents, while Majchur apprehended defendant. At the station, Agent Guerra displayed a blue and white bag which appeared to be the same one Majchur saw in the alley.

Agent Guerra testified that on September 20, 1988, he was planning on purchasing narcotics from Dominguez as part of a NEMEG plan. He arrived at Dominguez's home and had a brief conversation with him before they returned to the agent's car. He displayed the purchase money to Dominguez, and Dominguez stated that he would have to "contact his [Dominguez's] guy." Dominguez then exited the agent's vehicle and walked to a nearby pay telephone, but Guerra was not able to tell if, in fact, Dominguez used the telephone.

About 10 minutes later, Dominguez returned and said that he would meet "his guy," about a block away. Agent Guerra testified that when Dominguez left his presence, he was not carrying a blue and white plastic bag. Upon Dominguez's return 10 minutes later, however, he did have such a bag, and Dominguez stated "check it out, there is [sic] five in there and its real good stuff." When Agent Guerra opened the bag, he found five clear plastic bags therein, each containing a white chunky substance subsequently determined to be cocaine.

The primary difference in testimony in the two proceedings concerned where Agent Majchur was when he saw defendant exit his vehicle in the alley. At the civil forfeiture proceeding, Majchur testified that when he observed the vehicle in the alley he was parked on 16th Street. From that angle, he acknowledged later at the criminal trial that whoever went to the garbage can would have had to exit the passenger, not the driver, door. At the criminal trial, however, Agent Majchur said that he was on 15th Street looking in another direction, and that the person exiting the vehicle did so from the driver side door.

The only issue we address is whether the State, having failed to prevail in its civil forfeiture action against defendant, was precluded from pursuing a criminal action against defendant based upon the

same theory. We conclude that the State was barred from proceeding criminally in this case.

The State argues that it was not collaterally estopped from proceeding on the criminal action due to the lack of commonality of issues in the two proceedings. According to the State, in a forfeiture action such as the one involving defendant's vehicle, guilt or innocence is not at issue, only whether the vehicle was used in the commission of the offense. (See *In re $27,440* (1987), 164 Ill. App. 3d 44, 46, 517 N.E.2d 704.) The issue in the State's forfeiture action was whether it proved by a preponderance of the evidence that defendant's vehicle was used to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment of a controlled substance. (*People ex rel. Daley v. 1986 Honda* (1989), 182 Ill. App. 3d 322, 324, 537 N.E.2d 1077; see Ill. Rev. Stat. 1989, ch. 56½, par. 1505(a)(3).) Essentially, the State must prove a nexus between defendant's vehicle and the cocaine. (*People v. Strong* (1986), 151 Ill. App. 3d 28, 502 N.E.2d 744.) The issue in the State's criminal proceeding was whether it proved beyond a reasonable doubt that defendant knowingly delivered the cocaine. (See Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2).) Consequently, according to the State, the issues are not identical and the doctrine does not apply to estop the State from bringing criminal proceedings against defendant.

Additionally, the State argues that *People v. Moore* (1990), 138 Ill. 2d 162, 561 N.E.2d 648, and *People v. Williams* (1990), 206 Ill. App. 3d 1071, 565 N.E.2d 164, require that we affirm.

The parties have not cited any Federal or out-of-State authority upon the issue. However, there is abundant authority, which if not precisely on point, provides guidance in our determination. Preeminent is the United States Supreme Court case of *United States v. One Assortment of 89 Firearms* (1984), 465 U.S. 354, 79 L. Ed. 2d 361, 104 S. Ct. 1099. There, the Court was faced with a collateral estoppel issue in a case which procedurally involved the opposite of what occurred *sub judice*, in that a criminal acquittal preceded a forfeiture proceeding. In *One Assortment*, the defendant was found not guilty on the criminal charge of knowingly engaging in the business of dealing in firearms without a license. The government then instituted an *in rem* proceeding for forfeiture of the subject firearms. The Court held that acquittal of the gun owner on criminal charges involving firearms did not preclude a subsequent *in rem* proceeding against the firearms. (465 U.S. at 362, 79 L. Ed. 2d at 368, 104 S. Ct. at 1104-05.) Critical to the Court's holding was the difference in the standard of proof in the two proceedings. In the prior criminal case, the stand-

ard of proof was guilt beyond a reasonable doubt, and an acquittal on that charge reflected only a reasonable doubt as to the guilt of the defendant. In the forfeiture proceeding, on the other hand, the government's standard of proof only was that of the preponderance of the evidence. Consequently, while the State may have failed to prove the crime, it could still prevail by the latter, lesser standard.

The type of thinking employed by the *One Assortment of 89 Firearms* Court was consistent with prior Supreme Court cases (see *Helvering v. Mitchell* (1938), 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630; *One Lot Emerald Cut Stones & One Ring v. United States* (1972), 409 U.S. 232, 34 L. Ed. 2d 438, 93 S. Ct. 489), and has been followed by numerous Federal and State tribunals, wherein its reasoning was helpful to the disposition of collateral estoppel issues. (See, *inter alia, United States v. Fifty Thousand Dollars ($50,000) United States Currency* (6th Cir. 1985), 757 F.2d 103; *United States v. Furlett* (N.D. Ill. 1991), 781 F. Supp. 536; *United States v. Pryba* (E.D. Va. 1987), 674 F. Supp. 1518; *United States v. Approximately 2,475,840 Lbs. of Clear, Unroasted Coffee Beans* (D.C. Puerto Rico 1985), 608 F. Supp. 288; *United States v. Crispino* (D.N.J. 1984), 586 F. Supp. 1525; *In re Neil C.* (1987), 308 Md. 591, 521 A.2d 329; *State v. One 1977 Buick Automobile* (1985), 196 Conn. 471, 487 n.8, 493 A.2d 874, 883 n.8; see also Annot., *Acquittal or Conviction in Criminal Prosecution As Bar to Particular Actions for Forfeiture of Property or for Statutory Damages or Penalty*, 79 L. Ed. 2d 960, 972, 977 (1984).) Our own appellate court has relied in part on the rationale of *One Assortment of 89 Firearms* in concluding that the doctrine of collateral estoppel did not preclude revocation of a juvenile's probation after acquittal on aggravated battery charges. See *In re N.R.L.* (1990), 200 Ill. App. 3d 820, 558 N.E.2d 538.

We recognize that while *One Assortment of 89 Firearms*, involving as it does a different procedure, is not binding upon us, its reasoning is persuasive. Key to the Court in deciding *One Assortment of 89 Firearms* was the reasoning that in the forfeiture proceeding, the State had a lower standard of proof than it had in the first proceeding. As such, while the State may not have been able to establish beyond a reasonable doubt the defendant-firearms owner's guilt, it may have been able to prevail in the forfeiture proceeding at the lower standard of proof. The logic of the *One Assortment of 89 Firearms* Court suggests that when, as here, the State initially fails to prevail at a lower standard of proof, it cannot prevail at a higher standard of proof, providing commonality of issues and parties.

■ Our analysis of the issue begins with the requirements which must be met in order for collateral estoppel to apply. The doctrine of collateral estoppel, which applies to both civil and criminal actions, provides that an issue which has been raised and decided by a court of competent jurisdiction cannot be relitigated in a subsequent action between the same parties in the same or a different cause of action. (*Suttles v. Vogel* (1988), 126 Ill. 2d 186, 195, 533 N.E.2d 901.) Regarding collateral estoppel, the State's focus on appeal is that the two proceedings involve different issues. While its brief does not argue nonidentity of parties, we shall address the issue because it was part of the trial court's ruling.

" 'In connection with judicial proceedings the term "parties" is a technical word which has a precise meaning in legal parlance. It designates the opposing litigants in a judicial proceeding—the persons seeking to establish a right and those upon whom it is sought to impose a corresponding duty or liability ***.' " (*Evans v. Stoval* (1980), 83 Ill. App. 3d 257, 260, 403 N.E.2d 1321, quoting 59 Am. Jur. 2d *Parties* §7 (1971).)

It has been held that in an *in rem* proceeding there are no parties in the sense of opposing litigants, but the court may properly hear anyone who claims an interest and who seems in a position to throw light on the questions under consideration, and such a person is a party in the *in rem* proceeding. 59 Am. Jur. 2d Parties §1 (1987).

Additionally, in cases that involve collateral estoppel issues, the trend in the law is to discard the identical parties-mutuality rule entirely and to require that only one party or his privy, the one against whom estoppel is attempted to be used, be identical in the second action, especially when estoppel is urged defensively. (*Raper v. Hazelett & Erdal* (1983), 114 Ill. App. 3d 649, 653, 449 N.E.2d 268, citing *Riley v. Unknown Owners of 304 North Oak Park Avenue Building* (1975), 25 Ill. App. 3d 895, 899, 324 N.E.2d 78.) Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff previously litigated and lost. *In re Owens* (1988), 125 Ill. 2d 390, 397, 532 N.E.2d 248.

■ In applying the foregoing law to the facts *sub judice*, we conclude that the identity of parties prong has been satisfied. While the civil forfeiture case was an *in rem* proceeding, the nominal party was the defendant. It was the defendant that had the interest in the property the plaintiff sought to take. Moreover, the collateral estoppel was asserted defensively. In such a case, only the party against whom estoppel is being asserted need be identical.

With respect to identity of issues, it is important to note which issues the court in the civil forfeiture proceeding actually decided. As indicated, a civil forfeiture proceeding necessarily decides whether the vehicle was used to facilitate the commission of the offense. In this case, the trial court more specifically held:

"I don't know whether the bag that came out of the garbage can had any narcotics in it or not. Nobody else does either. Nobody can ever show that any narcotics was in the car. *** I am not at all convinced, certainly by a preponderance of the evidence, that the bag retrieved from the garbage can ever had any narcotics in it."

Whether or not the trial court's decision in the first proceeding was correct does not enter our analysis, nor does the State argue as much. Judge Bolan's disposition in the forfeiture proceeding, which was not appealed by the State, was final.

We accept the State's position that in a civil forfeiture action defendant's guilt or innocence is not at issue, but rather whether the vehicle was used in the commission of the offense. However, in the case *sub judice*, defendant's guilt or innocence was premised solely upon his use of the vehicle to transport the narcotics; this was acknowledged by the State at oral argument. Because this issue had been decided unfavorably to the State under a preponderance of the evidence standard of proof, the State is barred from proceeding against defendant under a beyond a reasonable doubt standard. We note that if the evidence in the case *sub judice* established that it was defendant who had arranged the transaction, and/or had been arrested with the narcotics on his person, a different issue would have been presented.

The cases which the State relies heavily upon, *Moore* (138 Ill. 2d 162, 561 N.E.2d 648) and *Williams* (206 Ill. App. 3d 1071, 565 N.E.2d 164), are distinguishable. In *Moore*, the court held that the results of a hearing on a petition to rescind a summary suspension of a driver's license cannot act as a bar to litigating the same issues in a criminal DUI proceeding. However, in so holding, the court heavily relied upon the fact that to bar the subsequent action would defeat the legislature's specific purpose to conduct the first proceeding in a swift fashion, and that the first proceeding was limited in scope. (*Moore,* 138 Ill. 2d at 169.) The court in *Williams* followed *Moore* in holding that the State was not collaterally estopped from litigating the DUI case after the issue of probable cause had been litigated in the summary suspension hearing. In the present case, no such specific purpose of the legislature is defeated by application of the doctrine of col-

lateral estoppel, and the State has not argued that the forfeiture proceeding was limited in scope or conducted in a swift fashion.

In *People v. Fulton* (1979), 68 Ill. App. 3d 915, 386 N.E.2d 605, not cited by either party, the defendant was found guilty of murder, attempted murder, aggravated battery and armed robbery which occurred in a Chicago office building. Previous to this conviction, the State failed in a civil forfeiture proceeding to present sufficient evidence to show that the defendant's car was used in the commission of these offenses. In holding that collateral estoppel did not apply, the court noted that the two proceedings involved different issues and that the civil forfeiture finding (that defendant's car was not used) did not negate the possibility of defendant's guilt.

In the case *sub judice*, however, the State failed to show in the civil forfeiture proceeding that the defendant's car was used to facilitate a crime. The defendant was convicted of delivery of a controlled substance. Because defendant's guilt or innocence was premised solely upon his use of the vehicle to transport the narcotics, and the State had already failed to prove by a preponderance of the evidence that the car was used, charging defendant with delivery was relitigating the same issue.

Our research has revealed one other case where acquittal in a civil action with a lower standard of proof preceded a criminal action based upon the same conduct. In *Bowling v. State* (1984), 298 Md. 396, 470 A.2d 797, the court held that collateral estoppel barred a criminal prosecution alleging sexual abuse after a proceeding for the benefit of a child in need of assistance was adversely litigated against the government. Both proceedings were based upon allegations of sexual abuse. In a subsequent Maryland Appellate Court case, the court explained:

> "Implicit in [our reasoning in *Bowling*] was our recognition that the State has a greater burden of proof in a criminal proceeding than in a CINA [the original action] case. If the State could not demonstrate by a preponderance of the evidence that Bowling had sexually abused his daughter, then it could not prove beyond a reasonable doubt that the abuse had occurred. Thus, the State's failure to meet the lower standard of proof in the CINA case precluded the criminal prosecution." *In re Neil C.* (1987), 308 Md. 591, 594-95, 521 A.2d 329, 331.

It is noted that the State benefits from the doctrine of collateral estoppel when it brings a successful criminal action, followed by a forfeiture action. (See *1986 Honda*, 182 Ill. App. 3d at 326 (and cases cited therein).) For all of the foregoing reasons, we hold that the

State is collaterally estopped from pursuing a criminal conviction where the State has first failed to prevail in a civil forfeiture proceeding based upon the same issue.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

EGAN, P.J., and McNAMARA, J., concur.